Robert, the second case in the morning called 214 0219 Marriage of Anbar on behalf of the Appalachians, Mr. Joel S. Ostrow on behalf of the Appalachians, Mr. David C. Adams, Mr. Robert, the second case in the morning called 214 0219 Marriage of Anbar on behalf of the Appalachians, Mr. Joel S. Ostrow. Thank you. Honorable Justices, Mr. Adams. After allowing Mr. Anbar his third turn at bat trying to gut a maintenance agreement that he had made years previously, the trial court here determined that the provisions, the maintenance provisions of the party's agreement, rather than being as written, were intended to put Mr. Anbar in almost total control of how much would be paid and that the amount would be cut in half and reduced in duration contrary to the actual written instrument. The agreement itself, while somewhat unorthodox, including that cohabitation would not result in termination of the maintenance, was clear. Even remarriage didn't terminate it. Correct. And so it was unorthodox, but it wasn't unambiguous. And parties are allowed to, or it wasn't ambiguous. Parties are allowed to agree to not, to a specific duration. They're allowed to agree to not apply the statutory termination events. And those agreements will be upheld by the court. What if it's internally inconsistent? Well, I don't believe that it is. And I thought the agreement was clear, is clear that Mr. Anbar was to pay $4,500 per month until both houses sold. And if that didn't occur, if the houses aren't sold, then he has to pay indefinitely. He was in total control of that, however. Well, how do you respond to the trial court's finding that no one would enter such an arrangement, then it's an anathema to the whole structure of Illinois Marriage and Dissolution of Marriage Act? That was the trial court's? Right. I don't believe that that's true because Mr. Well, first of all, Mr. Anbar's position is that, gee, the economy collapsed. I couldn't sell the houses other than at a loss. And therefore, we made a mistake in predicting the future, which is not cognizant. Cognizant. I can never pronounce that word. Assuming your race judicata argument doesn't fly, what's the standard of review for us in determining whether or not the trial court's order should be reversed? No. It's no. This is the contract interpretation. Correct. And I believe that what the contract says is, and I do want to point out, too, that this is at page 136 of the record and page 33 of the appendix, that the property division part of the judgment said, with regard to the sale of the two homes, that proceeds of this sale, if any, are to be divided equally between the parties. So it was the possibility that the properties wouldn't sell or that Mr. Anbar would decide not to sell them. Now, as I was saying, his position is, well, the economy collapsed. But the way that Judge Brodsky interpreted the disagreement, Mr. Anbar could simply decide, I don't want to sell them. Maybe they'll go up again in two or three years. But the agreement says that that impacts the maintenance, that he was to pay $4,500 per month until those homes sold. And Mrs. Anbar, now Ms. Roden, waived any control over the sale price or the other selling conditions. So it was and still is within Mr. ‑‑ well, not under Judge Brodsky's ruling, but under the way the agreement was written, within Mr. Anbar's purview, to start the 10‑year period running at any time that he decides to sell the homes. Counsel, let me just go back to a threshold question, and we're getting deeply into the merits. But you realized, I believe, initially, that the court didn't have jurisdiction to entertain the motions to reform the declaratory because the trial court lost jurisdiction. Well, yes. What are you basing that on? The ‑‑ Mr. Anbar brought a petition to start the maintenance running. And in that petition, he said that this has become unconscionable because I'm paying maintenance for too long of a period of time and the houses aren't selling because the economy collapsed. And that motion was opposed by Mrs. Anbar with her attorney saying this is the written agreement. This is what it says. He's trying to get you to change ‑‑ the judge is trying to get you to change that agreement. And Judge Brodsky agreed that with Mrs. Anbar, that the agreement was not ambiguous and this is what it meant. Didn't you argue that it was racially economic at that time? Well, that's arguable. What Mrs. Anbar's attorney said was that it was barred by a prior written instrument, which was the agreement itself. So whether it's under subsection 9 of 619 or subsection 4 of 619, he never used the words raised judicata. But he filed a motion to reconsider. Then he files a motion to reconsider. And while that was pending, this action, the declaratory action to reform, that was filed. Right. And your position is the court had no jurisdiction to entertain that? Correct. Why? Because for a couple of reasons. One is that the motion to reconsider, which was also amended, was denied prior to the court considering the declaratory and ‑‑ Weren't they kind of all done at one time, though? They were argued at the same time. Well, I think sort of the way it went was there was an argument on the reconsideration, and then there was an argument on reformation, and then the judge, in one order, said I'm denying the reconsideration. I will take the reformation. Let me pull this up because I think this is important. At the time that he filed this petition, okay, for declaratory reformation, had the court definitively ruled on the motion to reconsider? No, it had not. However ‑‑ Doesn't that enter into this? Okay. If ‑‑ because you still can't change the legal theory. You couldn't change the legal theory in a motion to reconsider, so why can you change it by just filing a new plea? Well, that may be true, but you're talking about a question of whether it's timely filed in jurisdiction. Well, timely filed and timely heard, I think, are separate questions. Anyone can file anything at any time. All you have to do is walk into the clerk's office and file it. As long as there's something pending. Right, but, well, even if there isn't ‑‑ I mean, let's assume that the courts, maybe we wouldn't be having this discussion, had ruled on a motion to consider, had denied it, and then he filed the declaratory action. That would be a little bit different than filing it while the motion to reconsider is pending. Well, except in similar circumstances, for example, with a motion to reconsider, one that's filed prematurely, so if it's heard after the final order is entered, it's fine. If it's heard before the final order is entered, it's a nullity. Well, in this case, what was it heard? It was heard ‑‑ Before the reconsideration ruling was ‑‑ Well, that's ‑‑ it's all on the same day, so that's kind of hard. Therein lies the problem. I think Judge Brodsky said he was denying, orally said he was denying the motion to reconsider, the amended motion to reconsider, before he then heard the arguments on reformation and declaratory. The written order was entered that day saying he was taking, denying the reconsideration and taking the amended motion under consideration. Was there a motion filed to dismiss the reformation action? I believe ‑‑ I don't think it was called a motion to dismiss. Well, that would have been the proper motion, correct? Well, in the response, the response said that under the same set of operative facts, the judge had already determined what the agreement meant and that it was improper for them to come forward and get a do‑over, I think, was the words that were used in the response. Isn't that what a motion to reconsider is, is kind of a do‑over? Not a do‑over of legal theories. And, you know, a motion to reconsider is to bring to the court's attention either an error of law that it made, new facts that weren't available, or an error in applying the facts to the law. But you can't, when they came before the court and said, you know, with the attorney who represented Ms. Hanover in the first place and said, here's what the agreement says, and now it's become unfair. There are only two ways in which I know of that your argument could be sustainable. One is the trial court didn't have jurisdiction to do what it did. Or the trial court abused its discretion in allowing this filing and granting the relief. Either because it was against the manifest weight of the evidence or as a matter of law it should not have been entered. I think ‑‑ So let's take the first first. The first is the court lacked jurisdiction. And why is that? I think it was because you claimed that res judicata applied. Correct. Res judicata, the case law, says in a subsequent action where the parties and the transactional facts are identical, res judicata applies. Where is the subsequent action? Where is the new case number? Where is the new service of summons on the party? Well, it wouldn't be in a post decree setting in a decision of marriage case. There wouldn't be a summons. You can initiate a post decree action simply by mailing a pleading to the other party. But the res judicata comes into effect because the court had entered an order denying the petition to commence maintenance, I believe it was called. But it was not a final order because there was a motion to reconsider filed within 30 days. And isn't that the touchstone? Doesn't there have to be a final judgment for res judicata to apply? Yes, but I don't know. I mean, I think it's really a, and maybe this is what Justice McLaren was referring to by possibly being an abuse of discretion. To allow a change in theory midstream. By virtue of the fact, well, I've stayed this from being a final order by final motion to reconsider. So now I can't change my legal theory in my motion to reconsider because that's untenable. So I'll just simply file a new pleading with a new cause of action. That seems to me rather stretching the process. Counsel for Dan argued that it was a separate new action. It's not the same action. Well, it's under the same set of operative facts and with the same essential claim for relief, which is change this agreement. To interpret this agreement to mean something that it doesn't say. But whether you look at it as a declaratory action or the one, and I'm wandering around here, but within the process of both the prior attorney's pleadings and the pleadings filed by current lawyers, they argued everything possible. They argued it was ambiguous. They argued that it didn't properly reflect the party's intent. They argued that there was even some mention of fraud. Somehow Mrs. Ambar had taken advantage of Mr. Ambar. They ordered mutual mistake. Then Judge Brodsky ends up ruling no one in their right mind would have done this, which should have been established as I said in the briefs at the prove up. And at the prove up, you know, Mr. Ambar was reminded that some of the things that he had agreed to his counsel and advised him against, and he said he was agreeing to him anyway. Now, this is not the usual case of raised judicata. Is it where you have an order, you have a case filed, you have an order, you have a subsequent case, you have a new petition? What's clouding this, when you think about it, is that these petitions were all sort of pending at the same time before the court then made a final ruling on the motion to reconsider. Do you have a case that says, under these circumstances, it must be raised judicata? No. Under the circumstances of this case, when you have this reformation petition filed, when the motion to reconsider hadn't been ruled on yet, that that's raised judicata? Do you have a case that says that? No, I do not have a case that says that. There's also a case law that says a final judgment is one in which the only thing left to be done is execution thereon. Correct. In this case, it would seem that there was something more that needed to be done before execution could be done. The denial of the motion to reconsider? No, the denial of the motion or petition for reformation. Or any other motion that might be timely filed while the trial court still retains subject matter jurisdiction, despite what's going on relative to the appeal time that might derive from the denial of the first post-judgment motion? Again, I can only reiterate what I said before, which is that to use this process to change your legal theory when you couldn't have done that in the first place, is allowing that to happen, I think, is an abuse of discretion. Ruling, taking the argument on the declaratory judgment after the amended motion of reconsideration was denied, I think it was raised judicata at that point. We heard the time. Am I out of it? We have a question or two left, so I don't think you're going to be out of time until we tell you to sit down. Okay. I feel somewhat handicapped by the fact I haven't been able to argue what the agreement says at all. Well, that's one other question I was going to ask. How do you reconcile the apparent conflicts between the 10 years and the 8 years and the triggering event of the marriage and, as Justice Burkett related, the findings of the trial court that suggested that this was incongruent or anomalous or inconsistent or oxymoronic or paradoxical? Well, I think that if you follow the agreement along by paragraphs, that that's not really the case, that what it said was Mr. Ambar would pay $4,500 per month until the house is sold. That is unambiguous. It then says when the houses are sold, a 10-year period of maintenance will then begin to run with various step-downs of the amount of the payment. This was all non-modifiable. All of that's unambiguous. It then said if Mrs. Ambar got married during that 10-year term, then the term would be cut to 8 years and the payments would be cut in half. That's also unambiguous. And I can't sit here and say why Mr. Ambar agreed to this, but these terms do not contradict with one another. And as I said in my brief, Mrs. Ambar relied on the unambiguous terms of the agreement to get married. And as you mentioned at the prove-up, Mr. Ambar's counsel made it clear that there were some things in there that were against his recommendation. Correct. So I do think that the intent of the parties, which is what is supposed to be determined from the written terms, is clear by the written terms. As I said at the beginning, they're unorthodox. So you're saying whether they were wise, unwise, unorthodox, shouldn't matter as long as they freely and voluntarily entered into these unusual terms. That's right. And you can't, you know, it's very unusual to come in 5 years later and say I didn't know what I was doing. I mean, especially after the attorney who represented you when you did it came in with a pleading that says this is what we intended. And Dan controls the triggering of that period because it's up to him to move forward with the sales. Correct. And as I said, he could, even if the properties then gained in value, he could still say, well, I don't want to sell them yet. And the loss is being shared. If there's a loss, it's being shared by my client. So that wasn't the quid pro quo for the maintenance provisions because the parties are equally affected by the sales of the homes. Thank you. You have an opportunity to make rebuttal. Thank you. Mr. Adams? Good morning here, Adams. Mr. Astro. May it please the court. I want to make sure I speak in here. I think essentially this is about what it is that Dan Anbar bargained for. Counsel here suggested, and we've got to remember, these people are signing a marital settlement agreement. They're getting divorced. And it's pretty clear that the policy of the Illinois Marriage and Dissolution of Marriage Act is to allow people to separate from one another, to put a finality in their relationships after they're divorced, and to go on about their lives. If you were to – what the agreement that Mr. Astro suggests to you that my client signed was this, that he agreed to this indefinite term of maintenance in which – what my client actually agreed to in the first place was a 10-year term of maintenance, which would be shortened down to eight years in the event that Mrs. Anbar remarried, and that until these two houses sold that he would be paying at this reduced rate, and also that, again, if she remarries, that the term – Why would he be paying at a reduced rate? Well, the agreement says that they pay because he was paying the two mortgages on the two houses. So if you look at the first paragraph of the agreement – Because that's one of the two houses. Right, but she got remarried four months after the divorce occurred, and she moved out of one of those residences into a new residence with her new husband. So she vacated those residences. And these houses are a million dollars underwater. So the problem here that occurred is neither of these parties could have anticipated what the catastrophic demise of the real estate market that occurred shortly after this agreement was executed, but if I could. So this is what he had agreed to. Now, what they're suggesting, what they've suggested consistently in the lower court is, first of all, that what my client ended up agreeing to was that her remarriage doesn't count because it occurred while the houses were still up for sale. Counsel's brief argues, and in the lower court, they argue that, so she got remarried right away, but it didn't occur for when the maintenance term began, and so not even that marriage counts. So she's entitled to the full 10 years. And I think that that construction and the idea that my client bargained for, okay, you can get married in this time when I'm trying to sell the houses here, and that doesn't count, but if you get remarried after that, then it does count, and then I can get the term reduced to 8 years and the amount reduced. I just don't know how anyone could say that that's a reasonable construction of this agreement or that anyone would have signed such a thing. Why did the original petition talk about commencement of, or having the court declare commencement of support when he was paying all along? Well, why didn't it say commencement of the 10-year term or something of that nature instead of making it sound like he hadn't been paying any maintenance? Well, honestly, I cannot really speak to why previous counsel had filed the petition that they did, but what I can, and obviously the legal theory in that is incorrect, and I can't really speak to why he filed this petition seeking this commencement. I believe that the proper, there was clearly a controversy between the parties as to what this agreement meant and its terms, and I think. Shouldn't he be stuck with that filing? You said he argued the wrong theory. Well, no, no, Judge, and I think in my brief I talked about, in Mr. Ossara's brief, he argued that it was a judicial admission, and respectfully, I don't believe it is a judicial admission because a judicial admission is I ran the red, oh my gosh, I ran the red light when I hit your car, okay? And that involves an issue of fact. What we have here is my prior counsel proceeded on an erroneous legal theory, and so it wasn't. I think a judicial admission would have been I was negligent when I hit your car. Okay. Not that I ran a red light, because you can run a red light for a variety of reasons that don't necessarily establish negligence, breach, and proximate damages. Your Honor, your example is much better than my extemporaneous one here. But, so I don't believe it was, it can't be a judicial admission because it wasn't. The trial court clearly had jurisdiction to hear this reformation declaratory judgment. Absolutely, Judge. First of all, it was a two-count pleading that we filed. The first one was brought under, the first count was brought under Section 2-701 of the Code of Civil Procedure and was seeking declaratory relief. And I think this is the crux of this issue and the argument that Mr. Ossara and I have about this. What he would suggest and what his brief suggests and what he suggested to the trial court and was rejected by the trial court was that we were trying to modify the agreement. The agreement clearly says it's non-modifiable. Our client was stuck with this, and that's why I'm at a bit of a loss to understand why my prior counsel filed a petition under Section 5-10 of the Divorce Act, which governs modification of an agreement. When they clearly agreed, I'm quoting here, the maintenance provided for in this agreement shall not be subject to review or modification. So, what we saw in count one was a declaratory judgment as to what the meaning is. The parties were in a clear controversy as to what it meant. But the judge had already ruled on that. In what? In the original pleading he ruled, he denied the motion, correct? He denied the motion to, he denied that petition to modify the agreement because it was non-modifiable. But we didn't get to the construction of the agreement within the context of arguing that.  In court, what he was trying to do is say, what he was trying to do is say, look, my clients, these properties are under water, this situation has become oppressive. And frankly, he shouldn't have tried to do that. What about counsel's argument that even if race judicata doesn't apply, it's an abuse of discretion to allow a party to change legal theories in a motion to reconsider? Well, my motion to reconsider, that motion to reconsider was amended. And in that amended motion, I agreed that it could not be modified. And all I said was that I didn't think that the court, you know, I thought that the court had decided it under the wrong part. But I didn't have a problem with the fact that that petition was dismissed. And so the legal theory that the other, that the prior counsel was moving under was saying, I can go and seek to modify this. And I'm not, I can't argue that that's, that clearly was erroneous. And so the proper way of dealing with the situation when both parties were at odds as to what this agreement meant was to do, well, quite frankly, what I did, which was file a petition for declaratory relief, which seeks. You also entitled it reformation, correct? In the alternative for reformation, yes, sir. We all acknowledged here, you've admitted it, he's admitted it, this was intended to be non-reviewable and non-modifiable. Correct. So how do you construe reformation? Doesn't it imply something's got to be modified here? If you reform something, it's a form of modification. No, no, no, sir. I respectfully disagree with that. Modification is modification. What are you reforming, I guess? Reforming, you reform a, when a litigant seeks to have a contract reformed, that litigant's asking the court to reform the contract to the agreement of the parties. What they're saying is this agreement is, that the agreement does not reflect the true intent of the parties. Whereas modification is saying, I don't, modification is saying I need a new deal. Okay? What reformation is saying is our agreement doesn't, I'm sorry. Her circumstances have changed. Her circumstances have changed. Like she got remarried. Like she got remarried. Whereas reformation doesn't say I want, I need a modification or a change because circumstances have changed or whatever. Reformation says this agreement doesn't properly reflect the intent that we originally had when we entered into it. And so it is, it is not modification. And indeed, that's why I first sought declaratory relief, was I would have, clearly both parties had different constructions of this agreement. Well, you're, you know, you're kind of arguing out of both sides. On the one hand, you're saying it's to reflect the mutual, the mutual intent of the parties. That's reformation. Right. But you, earlier you argued neither party could have foreseen the collapse of the real estate market. Well, I, I. You understand my point? No, I understand. That's, that's, that's modification. That's not reformation when you're talking about unforeseen circumstances or mutual mistake. What was the mutual mistake of the parties? Well, first, if I could say this, the relief that we requested in the declaratory in that petition wasn't predicated upon that, upon that change of circumstances. Rather, it was predicated upon the actual controversy and the dispute between the parties as to what the agreement meant. And so that, that, that external circumstance, I wasn't trying to pull that into it, into what was going on. I'm sorry, with respect to the other one. No, with respect to the, the, your, your argument, your argument earlier about the collapse of the market goes to a modification. We have to modify the agreement because things have changed as opposed to, well, this was the original intent of the parties. So reform the contract, reform the mere settlement agreement. Oh, no, I, well. Why did you argue that then? That what? That neither, no one could have foreseen the collapse of the real estate market. No, I, what I was, what I was doing there was attempting to explain to you why that these houses weren't selling. Why they couldn't, why these houses couldn't end up being sold. But again, I, I didn't bring that into the petitions. I didn't, if, if you look in the record there, my petitions don't go and try and plead circumstances. Rather, they purely, what they were focused on quite precisely was that Mrs. Ann, the former Mrs. Ann Bauer had one construction of the agreement. And then we had another construction of the agreement. And then we needed the, the court to interpret, you know, that agreement as a matter of law. Setting aside the title of the pleadings for a second. Sure. The thrust of his argument is raised judicata applies here. Can you tell us succinctly why raised judicata does not apply under the facts and circumstances of this case? Okay. First, and I would refer my brief, they waived that argument by not arguing it in the trial court. Secondly, what we filed was a 2-701 action, which can be filed as a collateral action. We could have filed the same action in the Chancery Division if we wanted to under 2-701. And so, again, it's not, again, it's not trying to relitigate the same claims and facts, but rather seeks that construction. So it was brought under 2-701. And the reformation count as well can be brought after the fact with respect to this. And then finally, I would add also that counsel here never raised this argument, again, going back to that argument. They didn't raise it and they didn't attack the petition by waiving it. How do you know they didn't raise it? Well, they could have filed a motion to dismiss under Section 2-619 the petition for declaratory relief and to reform and brought that argument up at that point. Did they raise it during argument? No. How do we know they didn't? How do we know that they didn't what? You've heard the case Fouch v. Bryant, I believe, where if we don't have a record. That's correct. Preservation of error. That's correct. You're arguing the negative. You're arguing that they didn't raise the affirmative matter of race judicata. We can't determine whether they did or they didn't or she did or didn't because there is no transcript or record to establish that it, in fact, occurred. Well, again, that's certainly correct. But what they could have done is they could have attacked that in a 2-619 petition instead of answering my petition, which is what they did. And this will feed into one final point. You said they answered your petition. Are you just saying they filed a general answer with a denial? Well, they responded. They answered. They did not turn around and raise these issues. They went on and we litigated the whole thing. They didn't say, hey, you can't change your legal theory. They didn't attack your plea. No, that's the first time. This has been raised for the first time. They did argue that this is a do-over. They're attempting to get a do-over. That's true. I mean, isn't that what race judicata really is all about, is precluding parties from a do-over? Well, yes, it is. But, again, you're arguing. Well, I don't think do-over is race judicata. Yeah. Do is over is, yeah. Yeah. But, again, Judge, we were seeking to have this document construed by the court and solve the controversy as to what it meant. And so no one was going back and trying to re-litigate the original claims or what it was or what the – we weren't trying to re-do the terms of the deal. Rather, what we were trying to do is get the court to discuss them. And then, also, I would add that as they went and they proceeded to go about arguing this petition, if you assume for a moment that this – and, again, I don't give much credence to this race judicata argument – well, then you've got a reinvestment issue because they went on and litigated the thing. Well, reinvestment only occurs if both parties agree that the original judgment was in error and they're agreeing to change the judgment. That's not the case here. Well, I – That's Bailey. It's relatively new. Okay. The case that I saw was OCE – was the Harchin case, the OCE – Harchin case. The Supreme Court made a policy declaration because the law previously related to whether or not you objected to the jurisdiction of the court, and they finally came up with the argument over an evolution of time. If you don't – you have to affirmatively agree that you're basically there and you're willing to have the court reconsider or be revested. Otherwise, it doesn't happen. Okay. It's a criminal case. People debate it. You argue in your brief that the declaratory relief reformation petition was not a successive post-judgment or post-conviction petition. Yes, sir. Instead, it was a collateral claim from your amended motion to reconsider. Correct. If that's the case, it was a separate claim, how did the trial court have jurisdiction over it? Well, under the statute, you can file for the declaratory relief. You found that the elements were there. You file – again, you can file a declaratory relief. It can be on an insurance policy. It can be on a marital settlement agreement, which is another form. It can be on what the meaning of a judgment is. So the act itself, the section 2-701 of the Code of Civil Procedure gave him the jurisdiction. The subject matter jurisdiction over this. And earlier, you argued that former counsel – this is the action he should have filed. He filed the wrong action. That's correct. He surely should not – the agreement says you can't modify it. He sought modification. But isn't your client bound by that? Again, Judge, this is not a judicial admission. And not only that, but the agreement – is he bound by the fact – he sought modification. He was turned down for that. He's bound by – I guess the better question is he is bound by this marital settlement agreement. And he's bound by what it means. And that's what we needed the court to decide because we had two different – two different views on that. I mean, ultimately, if I hadn't filed this, what would – the way that this situation would have come about? Our client could have simply paid in accordance with the agreement as we have asserted and as the trial court now has asserted it reads. Then the other side would have filed a petition for rule to show cause. And we would have been here on – by that mechanism. So he's bound by the fact that he couldn't modify it, yes. But he's not bound by arguing what the actual agreement means. It's a little bit like saying that just because he couldn't modify it doesn't mean that he has to accept the other side's interpretation about that. Yes. He doesn't have to accept it because that agreement means something that transcends both of their arguments of what it means. And that's to be determined, I guess, by the trial court and now ultimately by Your Honors. I'd like to thank you. You're welcome. Okay. Mr. Ostrow. Yes. Briefly, Justice McCloud, there is a transcript of the argument on the declaratory judgment at which – during which Mrs. Zandler's attorney did argue that they were changing their legal theory. He also – several paragraphs in his response to the declaratory and reformation petition. He says how their case law doesn't apply because they're changing their legal theory. The court had already determined what the agreement meant. So that was argued, and that is a record. Is that enough to presume? I believe so. I don't – it becomes form over substance if it's required for you directly to say under 735 ILCS 5-2S 619-4, it's res judicata. I think the substance of the argument was made. On the – He's making the argument on the merits, not on raising the bar of res judicata. He's making that argument on the merits. Well, he's saying – he said that the merits have already been determined. The legal theory is now changing under the same agreement that they attacked in the first place, and you've already decided. So I think – And that's in the record here? Yes, it's in the response to the petition for declaratory judgment and reformation, and there's also in the transcript. Ms. Ambar's attorney talks about that as well. The counsel acknowledges that that argument was made, but he's – his argument is that's not enough. I understand that. I responded to that in the only way that I can, which is I think you're elevating form over substance if you say that this particular statute wasn't cited at the time, this particular part of this cause, civil procedure. I do want to address as quickly as I can. What this is about, the substance of the case, is about the intent of the parties. Intent is an issue of fact, period. Then it's not the noble review? It's a manifest void issue? Well, this court decided it on its interpretation of the – When you say this court, you meant the trial court? The trial court, without taking any evidence because both sides made dispositive motions. Now, in their dispositive motions, as we argue in the briefs, there is no indication in any of the dispositive motions that Mrs. Ambar made any mistake, that this agreement did not comport with what she intended it to say. And for five years, both parties manifested the same intent. It was only when the declaratory and reformation petition was filed that suddenly Mr. Ambar said this agreement, which I've lived by for lo these many years, doesn't say what I wanted, what I thought it was going to say or what I intended it to say. There's no indication that Mrs. Ambar had that understanding. Plus, part of that – or to vindicate that, part of what we've been speculating about is, well, why was it $4,500 a month while the house was going sold? Why was it – why did the 10-year term not start? Why did she get married not during the period? And, you know, I've cited cases that say if this court feels that there's some contradiction in the terms and that it is ambiguous, because both sides took dispositive positions on the question of law, that doesn't preclude there being a hearing on what the party's intent actually was at a later date. And I've cited cases where both sides make motions for summary judgment and one's granted. There was no hearing. The appellate court was supposed to come out or should be one because we don't know what the intent of the parties were. And it's clear on the record, nobody intended for there to be an evidentiary hearing on the day that the motions were argued and Mrs. Ambar wasn't present. So unless the court has any other questions, I have said all I have to say at this time. Thank you. We'll take the case under advisement. We have other cases on the call, of course, at recess.  Thank you.